IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVISON DESIGN & DEVELOPMENT, INC., | )<br>)<br>) |
| Plaintiff, | ) Case No. _____ |
| | )<br>) |
| v. | )<br>) |
| BETTY FRISON, | )<br>) |
| Defendant. | )<br>)<br>) |

## COMPLAINT

Davison Design & Development, Inc. ("Davison Design"), by and through its undersigned counsel, hereby files this Complaint against Betty Frison ("Ms. Frison"), alleging as follows:

## NATURE OF THE CASE

1. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Davison Design seeks an Order from this Court vacating, or, in the alternative, modifying the August 14, 2017 American Arbitration Association award ("Award") entered for Claimant Ms. Frison and against Respondent Davison Design by Arbitrator Kenneth A. Eisner (the "Arbitrator") in Arbitration No. 01-16-0005-2925 (the "Arbitration").

2. The Arbitration Award should be vacated because the Arbitrator acted in manifest disregard of established law and exceeded the scope of his powers by ignoring the contracts governing the relationship between the Parties and finding Davison Design liable for representations it had expressly and repeatedly disclaimed in those contracts.

3. In the alternative, the Arbitration Award should be modified because the Arbitrator committed a material miscalculation of figures by doubling Ms. Frison's actual

1

damages, despite finding Davison Design had not committed any intentional misrepresentation, the only basis upon which actual damages could be enhanced.

## PARTIES AND JURISDICTION

4. Plaintiff Davison Design is an invention-services company incorporated in Pennsylvania with a principal place of business at 595 Alpha Drive, Pittsburgh, PA 15238.

5. If an individual has an invention idea, he or she can contract Davison Design to perform product-related research, attempt to license the invention, and design and build a prototype, graphics and packaging.

6. Defendant Ms. Frison is a citizen of the State of Illinois who engaged Davison Design to assist with the development of an idea she claims to have originated.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Ms. Frison's primary claim against Davison Design in the Arbitration was for violation of the American Inventors' Protection Act ("AIPA"), 35 U.S.C. §297.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 9 U.S.C. §§ 10-11 because the Arbitration Award was entered in the Western District of Pennsylvania.

## FACTUAL BACKGROUND

**A. Ms. Frison Submits Her Idea to Davison Design and Acknowledges Numerous Disclosures.**

9. Ms. Frison submitted her product idea through the company's online process on March 24, 2014.

10. In the first step of the online idea submission process, Ms. Frison entered her contact information, provided basic information about her product idea, checked a box certifying she was over the age of 18, and certified that she read and agreed to the terms of the Submission

Agreement by entering her initials into a box above a button labeled "Submit your idea," and then clicking that button.

11. By agreeing to the Submission Agreement, Ms. Frison acknowledged that she understood that "Davison does not promise any financial gain from development of any new product idea."

12. In the second step of the online idea submission process, Ms. Frison viewed Davison Design's Affirmative Disclosure Statement, which read:

> **You should read all of this information carefully before proceeding.**
>
> The total number of consumers who submitted new product ideas to Davison during the past five years is seven hundred seventy six thousand seven hundred twenty three (776,723). Davison does not provide evaluation of commercial potential; thus, it has provided no positive or negative evaluation of this or any other product idea in the last five years. The total number of consumers who were offered a Pre-Development agreement (or similar contract for research services) is two hundred ninety five thousand five hundred sixty one (295,561). The total number of consumers who were offered a Contingency Agreement (or other contract for licensing representation) is two hundred ninety five thousand five hundred sixty one (295,561). The total number of consumers who purchased a Pre-Development Agreement or similar contract for research services is fifty eight thousand nine hundred ninety seven (58,997). The total number of consumers who signed a Contingency Agreement or other licensing representation agreement is fifty eight thousand nine hundred ninety seven (58,997). The total number of consumers who were offered a New Product Sample Agreement (or any other contract for design services for a virtual or a product sample) is forty one thousand three hundred eighty six (41,386). The number of consumers who signed a New Product Sample Agreement or similar agreement is seventeen thousand eight hundred fifty (17,850). The number of consumers who obtained a written license with a company that is not affiliated with Davison is three hundred forty seven (347). **The total number of consumers in the last five years who made more money in royalties than they paid, in total, under any and all agreements with Davison, is sixteen (16). The percentage of Davison's income that came from royalties paid on licenses of consumers' products is .001%.**
>
> Numbers current as of January 31, 2014

13. To proceed to the next step of Davison Design's online idea submission process, Ms. Frison had to, and did, check a box confirming that she "received and read" the information contained in the Affirmative Disclosure Statement and then click the "Continue" link.

14. Davison Design's idea submission system would not have allowed Ms. Frison to proceed to the next step unless she verified that she received and reviewed the information contained in the Affirmative Disclosure Statement. If she had attempted to do so, the system would have generated an error message instructing her to acknowledge that she received the disclosure.

15. In the third step of the online idea submission process, Ms. Frison viewed Davison Design's AIPA Disclosure Statement, which read, in part:

> **You should read all of this information before proceeding.**
>
> Davison complies with all regulatory codes. 35 United States Code § 297 requires that specific information be provided to you prior to contracting for our services:
>
> Davison does not offer evaluations of idea submissions for commercial potential; therefore, the total number evaluated in the past five years is zero (0), the number of positive evaluations is zero (0) and the number of negative evaluations is zero (0). The total number of customers who have contracted with Davison in the past five years is fifty eight thousand nine hundred ninety seven (58,997). The number of customers who received a net financial profit as a direct result of the company's services over the company's history, since 1989, is thirty one (31). Since 1989, the total number of customers known by Davison to have received license agreements for their product ideas as a direct result of Davison's services is seven hundred fifty (750).
> …
>                                                                             Numbers current as of January 31, 2014

16. The AIPA Disclosure Statement also provided information regarding all of the various services offered by Davison Design, and the fees associated with those services.

17.  To complete Davison Design's online idea submission process, Ms. Frison had to, and did, click a box marked "continue" next to the box indicating that she "received and read" the information contained in the AIPA Disclosure Statement.

## B. Ms. Frison and Davison Design Enter Into a Pre-Development Agreement, Which Contains Additional Disclosures.

18.  After submitting her idea to Davison Design through its online idea submission process, Ms. Frison entered into three related contracts with Davison Design to help develop her product idea—a "Confidentiality Agreement," a "Pre-Development and Representation Agreement" (the "Pre-Development Agreement"), and an "Integrated Product Rendering Presentation Agreement" (the "IPRPA").

19.  Pursuant to these agreements, Davison Design agreed to, *inter alia*, design and develop a rendering of a product and package design based on Ms. Frison's product idea and present the rendering to potential licensees.

20.  In exchange for the services outlined in those agreements, Ms. Frison paid Davison Design a total of $6,645, and granted the company a 10% royalty on any future sales of Ms. Frison's product idea.

21.  On March 31, 2014, Ms. Frison signed the Confidentiality Agreement and Pre-Development Agreement provided to her by Davison Design.

22.  The Pre-Development Agreement contained the following disclaimers:

   a.  Section III(D): "Client acknowledges that Davison has made no claim or warranty that Davison will be able to consummate a License Agreement, or find a Licensee willing to compensate Client for his or her product and/or design."

   b.  Section III(D): "Client acknowledges that Davison has not made any representations concerning the potential of Client's product to be marketed, licensed, patented or to make a profit for Client."

5

      c.      Section III(D): "Davison has not evaluated the Product; thus, its agreement to accept an interest in future potential payments due to Client is not a representation by Davison that the development of the Product will yield payments to Client."

      d.      Section III(G)(6): "Davison has made no oral or written representation of estimated or projected Client earnings."

23. The Pre-Development Agreement Ms. Frison signed also contained an integration clause expressly stating that "[t]his agreement contains the entire agreement between the parties as it pertains to the attempt to have the product or design licensed or sold to a Licensee."

24. On July 14, 2014, Ms. Frison signed the IPRPA.

25. The IPRPA specified that Davison Design "do[es] not promise or guarantee any financial gain from the development of any new product."

**C.**    **The Arbitration Between the Parties.**

26. After Davison Design had fully performed under its contracts with Ms. Frison, Ms. Frison filed her Arbitration complaint, alleging claims against both Davison Design and George M. Davison, Davison Design's CEO, for (1) violations of the AIPA and (2) fraudulent misrepresentation.

27. In the briefing that followed, Davison Design provided to the Arbitrator evidence of the disclosures Ms. Frison received, both through the online idea submission process and through her contracts with Davison Design.

28. In its briefing, Davison Design explained to the Arbitrator that Ms. Frison's claims that Davison Design knowingly made certain misrepresentations in order to induce Ms. Frison to enter into her contracts with the company were barred by the parol evidence rule and the Pre-Development Agreement's integration clause.

29. On August 10, 2017, following completion of briefing, the Arbitrator awarded Ms. Frison, as against only Davison Design, "$13,290.00 ($6,645 x 2 for Davison's deceptive actions" and "[r]easonable attorney's fees of $10,000.00." *See* Ex. A.

30. In purported explanation of the Award, the Arbitrator wrote that "[w]hile Respondent may have technically complied with all of the requirements of the [AIPA]," Davison Design "falsely represented by implication" that its customers "stand a reasonably good chance of realizing financial gain." *See id.*

31. To support that erroneous conclusion, the Arbitrator pointed to the following examples of supposed misrepresentations:

   a. A "representative of Davison saying Claimant's idea was 'reasonable' when in fact that meant that the paperwork was completed properly, and the invention was not one of the prohibited types of inventions considered by Davison";

   b. "the 10% commission of all monies received by Davison on the sale or license of a product, when in fact, there is virtually no chance of any commission being paid";

   c. "Claimant's idea, being handled by the 'director of new products,' not by just any employee"; and

   d. "[C]orrespondence from the president of Davison."

*See id.*

32. The Arbitrator issued a "reasoned award," in which he purported to set forth the specific findings and supporting reasoning that underpinned his Award.

33. Yet the Arbitrator's Award made no mention of the contracts governing the relationship between Ms. Frison and Davison Design, and did not address either the disclosures in those contracts or the integration clause in the Pre-Development Agreement, on which the briefing was focused.

34. The Parties were notified of and received this Award on August 14, 2017.

7

## COUNT I - Vacatur of Arbitration Award

35. The allegations set forth in Paragraphs 1-34 are incorporated herein by reference.

36. 9 U.S.C. § 10 permits this Court to vacate an arbitration award where, *inter alia*, "the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

37. Davison Design provided to the Arbitrator evidence of the disclosures it communicated to Ms. Frison, including in the contracts between the Parties.

38. Davison Design further explained, citing to supporting case law, that Ms. Frison's claims that Davison Design knowingly made certain misrepresentations in order to induce Ms. Frison to contract with Davison Design were barred by the parol evidence rule and the Pre-Development Agreement's integration clause.

39. Despite this, the Arbitrator ignored the numerous disclaimers present in the contracts between Ms. Frison and Davison Design, found that Davison Design made actionable misrepresentations that were directly contradicted by that contractual language, and awarded actual damages, enhanced damages, and attorneys' fees on that basis.

40. In so doing, the Arbitrator manifestly disregarded the law and thus exceeded his powers.

41. As a result, the Award is contrary to 9 U.S.C. §10(4) and should be vacated.

## COUNT II - Modification of Arbitration Award (*in the alternative only*)

42. The allegations set forth in Paragraphs 1-34 are incorporated herein by reference.

43. 9 U.S.C. § 11 permits this Court to modify or correct an arbitration award where, *inter alia*, "there was an evident material miscalculation of figures."

44. The Arbitrator awarded Ms. Frison double her claimed actual damages as

8

compensation for "for Davison's deceptive actions."

45. Enhanced damages are available only for willful, intentional misrepresentation.

46. The Arbitrator explained in the Award that Davison Design "technically complied with all of the requirements" of the AIPA and that any of Davison Design's misrepresentations were made "by implication" only.

47. The Arbitrator found that Davison Design had not made willful, intentional misrepresentations but nonetheless awarded enhanced damages.

48. As a result, the Award represents a material miscalculation under 9 U.S.C. §11(a) and should be modified to eliminate any enhanced damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby demands the following relief against Defendant:

(a) An Order vacating the Arbitration Award between Plaintiff and Defendant; and

(b) Such other declaratory, equitable, or legal relief as this Court may deem just and proper.

Dated: November 9, 2017

/s/ *Anna Shabalov*
J. Nicholas Ranjan (PA #93121)
Anna Shabalov (PA #315949)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222-2613
Telephone:  (412) 355-6500
Facsimile:  (412) 355-6501

*Counsel for Plaintiff Davison Design & Development, Inc.*