# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVISON DESIGN & )
DEVELOPMENT, INC., )
                                                                                       )
                Plaintiff, )
                                                       )     2:17-cv-01468
    v. )     Chief Judge Joy Flowers Conti
                                                            )
BETTY FRISON, )
                                                            )
                Defendant. )

## **MEMORANDUM OPINION**

CONTI, Chief District Judge.

### I.    INTRODUCTION

Plaintiff Davison Design & Development, Inc. ("Davison"), filed a complaint (ECF No. 1) to vacate or, in the alternative, modify an arbitration award dated August 10, 2017 (the "Award"), issued in favor of defendant Betty Frison ("Frison"). (ECF No. 1). Davison brings suit alleging that, under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), the arbitrator manifestly disregarded the law and exceeded his powers when entering the Award in Frison's favor and made a material miscalculation of damages owed pursuant to the Award. Presently before the court are the parties' cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56(a). (ECF Nos. 25, 29). This court exercises subject-matter jurisdiction under 28 U.S.C. § 1331. For the reasons that follow, Davison's motion will be DENIED, and Frison's motion will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Davison is an "invention-services company" or "invention promoter" subject to the provisions of the American Inventor's Protection Act of 1999, 35 U.S.C. § 297 ("AIPA"). (ECF No. 42 ¶ 1). Frison contacted Davison via the Internet on March 24, 2014, regarding a product idea – "something to dissolve tread in hair weaving." (ECF Nos. 38-3, at 5; 41 ¶ 4). Over the course of the next several months, the parties corresponded about this product idea and Davison presented Frison with a number of documents, including: (1) a Confidentiality Agreement; (2) a Pre-Development Representation Agreement ("Pre-Development Agreement"); and (3) an Integrated Product Rendering Presentation Agreement ("IPRPA"). (ECF No. 41 ¶ 5).

The parties' arguments center around the Pre-Development Agreement and the IPRPA and warranty disclaimers contained in both. The parties disagree about whether Frison signed the Pre-Development Agreement on March 31, 2014. Ahmed Arafat, the Chief Information Officer of 5D Services, LLC, which provides IT systems and support for Davison, declared that on March 31, 2014, seven days after Frison submitted her hair-tread idea to Davison, Frison accessed Davison's online portal and electronically signed the Pre-Development Agreement. (ECF No. 32-11 ¶¶ 1, 29). Conversely, Frison, in a sworn affidavit, testified that she never possessed an online log-on personal account with Davison and, thus, could not have electronically signed the agreement. (ECF No. 32-12 ¶¶ 5-6).[1] Nevertheless, Frison averred in her complaint that she made payments in accordance with the Pre-Development Agreement. (ECF Nos. 16-3 ¶¶ 26-29).

The Pre-Development Agreement contains the following provision:

> This Agreement shall be governed by the law of the Commonwealth of Pennsylvania and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. This agreement contains *the entire agreement* between

---

[1] Although Davison's Concise Statement of Additional Facts declares that Frison does not challenge the evidence that someone else may have used her computer to sign the agreement and Frison did not respond to that allegation, the evidence Davison cites in support of that allegation is Davison's own brief before the arbitrator. (ECF No. 36 ¶ 25).

the parties as it pertains to the attempt to have the product or design licensed or sold to a Licensee. This agreement may not be released, discharged, abandoned, changed, or modified in any manner except as provided herein or by separate instrument in writing signed by all parties.

(ECF No. 43-5 at 29) (emphasis added). It also contains the following disclaimers:

> Section III(D): Client acknowledges that Davison has made no claim or warranty that Davison will be able to consummate a License Agreement, or find a Licensee willing to compensate Client for his or her product and/or design. Client acknowledges that Davison has not made any representations concerning the potential of Client's product to be marketed, licensed, patented or to make a profit for Client. Davison has not evaluated the Product; thus, its agreement to accept an interest in future potential payments due to Client is not a representation by Davison that the development of the Product will yield payments to Client. . . .
>
> Section III(G)(6): Davison has made no oral or written representation of estimated or projected Client earnings.

(*Id.* at 29-30). There is no dispute, however, that Frison personally signed the IPRPA on July 14, 2014. (ECF No. 32-1). The IPRPA in the section titled, "Choice of Law; Arbitration; Cure" provides:

> A. This Agreement shall be governed by the *law of the Commonwealth of Pennsylvania* and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute, the parties agree to seek to resolve the dispute through good faith negotiation. For any dispute not resolved through good faith negotiation, the parties agree that all disputes shall be resolved through arbitration before the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA. Client agrees that any claim must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(*Id.* ¶¶ 4.A). The IPRPA does not contain a merger or integration clause. (*Id.*) It does, however, contain a provision that Davison, "do[es] not promise or guarantee any financial gain from the development of any new product." (*Id.* ¶ 3).

Frison ultimately paid $6,645.00 for various services to be performed by Davison. (ECF No. 41 ¶ 7). Frison's idea never came to fruition, and on or about May 5, 2017, she filed a

complaint in arbitration. (ECF No. 38-3). In count I of the arbitration complaint, Frison claimed that Davison violated the AIPA when addressing Frison's likelihood of success by making "material false and fraudulent statements or representations and omissions of material fact . . . and by their failure to make required disclosures." (*Id.* ¶ 66). In count II, Frison claimed that Davison was liable for fraudulent misrepresentation under Pennsylvania law because it "intentionally made the false statements and representations, including those which were implied by their omissions . . . in reckless disregard of [Frison's] rights, and for the purpose of deceiving [Frison] and inducing [Frison] to purchase Davison's invention-promotion services." (*Id.* ¶ 105). According to Frison, Davison's income is derived almost solely from fees charged for services, not from royalties derived from the successful promotion or licensing of inventions.

In the Award, the arbitrator found Davison liable under the AIPA and made the following findings:

> While [Davison] may have technically complied with all of the requirements of the American Inventors Protection Act, 35 U.S.C.A. § 297, "based upon the overall, common sense, net impression on a reasonable consumer, [Davison] falsely represented by implication, that consumers who buy their services stand a reasonably good chance of realizing financial gain." *F.T.C. vs. Davison, Inc.*, 431 F. Supp. 2d 548, 554 (W.D. Pa. 2006). Examples include but are not limited to (a) representative of [Davison] saying [Frison's] idea was "reasonable" when in fact that meant that the paperwork was completed properly, and the invention was not one of the prohibited types of inventions considered by Davison, (b) the 10% commission of all monies received by Davison on the sale or license of a product, when in fact, there is virtually no chance of any commission being paid; (c) [Frison's] idea, being handled by the "director of new products", not by just any employee, and (d) correspondence from the president of Davison.

(ECF No. 30-9, at 4). The arbitrator went on to award Frison double the amount that Frison paid to Davison for services – $13,209.00 – due to Davison's "deceptive actions," as well as $10,000.00

in "[r]easonable" attorney fees.[2] (*Id.*) The arbitrator denied Frison's claim for fraudulent misrepresentation under Pennsylvania law. (*Id.*)

On January 19, 2017, Davison filed a complaint challenging the Award in this court. (ECF No. 1). Frison filed her answer on April 10, 2018. (ECF No. 24). Cross-motions for summary judgment followed on April 27, 2018, in which Davison seeks vacatur of the Award and Frison seeks confirmation. (ECF Nos. 25, 29). The matter is fully briefed and ripe for disposition. (ECF Nos. 26-28, 30-49).

### III. LEGAL STANDARD

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998). The mere existence of a factual dispute,

---

[2] At arbitration, Frison's requested $46,528.79 in attorneys' fees and costs. (ECF No. 30-7).

however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

IV. **DISCUSSION**

"There is a strong presumption under the Federal Arbitration Act in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (internal citation omitted). "When parties move to confirm or vacate an arbitration award, 'the court's function in confirming or vacating a commercial arbitration award is severely limited.'" *Daugherty v. Wa. Square Sec., Inc.*, 271 F. Supp. 2d 681, 685-86 (W.D. Pa. 2003) (quoting *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989)). A district court may vacate an arbitration award "'only under [the] exceedingly narrow circumstances' listed in 9 U.S.C. § 10(a)." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). Section 10(a) provides:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

### A. Timeliness of Federal Complaint

Frison contends that the instant action is untimely given that it was not filed within thirty days of the arbitration award as required under Pennsylvania law. (ECF No. 31, at 7-13). Conversely, Davison argues that because the FAA's three-month notice provision governs the timeliness of the motion, its complaint was timely filed in this court. (ECF No. 35, at 9-11). For the reasons that follow, Davison's complaint was timely filed because the parties did not expressly opt out of the FAA's procedures.

The FAA requires "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within *three months* after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). Pennsylvania's arbitration statute reads "application under [42 PA. CON. STAT. § 7314(b)] shall be made within 30 days after delivery of a copy of the award to the applicant." 42 PA. CON. STAT. § 7314(b).

The applicable IPRPA provision reads: "Choice of Law; Arbitration; Cure"

> A. This Agreement shall be governed by the *law of the Commonwealth of Pennsylvania* and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute, the parties agree to seek to resolve the dispute through good faith negotiation. For any dispute not resolved through good faith negotiation, the parties agree that all disputes shall be resolved through arbitration before the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA. Client agrees that any claim must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(ECF No. 32-1 ¶¶ 4.A) (emphasis added). To opt out of the FAA procedures for vacatur and confirmation, the parties must clearly express their intent to do so and a general choice of law provision is insufficient to do so. *Oberwager v. McKechnie Ltd.*, 351 F. App'x 708, 710 (3d Cir. 2009); *see Lex v. Weinar,* Civil Act. No. 13–mc–96, 2015 WL 1455810, at *2 (E.D. Pa. Mar. 31, 2015). A plain reading of the language of the contract demonstrates that the parties only intended

7

for Pennsylvania law to govern the interpretation of the contract and that they did not intend to forego federal procedural rules. *See* (ECF No. 32-1 ¶¶ 4.A). Accordingly, the FAA's notice provision applies and Davison's complaint was timely filed.

### B. Manifest Disregard of the Law for Contract Interpretation

In count I of its federal court complaint, Davison seeks vacatur of the Award, arguing that the arbitrator exceeded his powers and manifestly disregarded pertinent law. (ECF No. 1 ¶¶ 35-41). It is rare to disturb an arbitration award. *Freeman*, 709 F.3d at 251. A deferential standard of review applies, and this court must proceed under the assumption that the Award is enforceable. *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012). The bases for vacatur are exceedingly narrow and the record must evidence egregious departures from the parties' agreed upon arbitration. *Id.* "Manifest disregard" is not one of the grounds for vacatur listed in § 10(a) of the FAA. It is a judicially-created doctrine that is invoked to "vacate an arbitrator's decision [that] evidences a manifest disregard for the law rather than an erroneous interpretation of the law.'" *Goldman v. Citigroup Global Mkts Inc.*, 834 F.3d 242, 255 (3d Cir. 2016) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)) (internal quotation and editorial marks omitted). Although there is a circuit split with respect to whether manifest disregard for the law remains a viable cause of action post *Hall Street Associates v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), the Court of Appeals for the Third Circuit has not yet addressed this issue.[3] *See Goldman v. Citigroup Global Mkts. Inc.*, 834 F.3d 242, 256 n.13 (3d Cir. 2016) (explaining "[t]he continued validity of manifest disregard as a basis for vacating arbitration awards has been thrown into doubt"). Even

---

[3] The Court of Appeals for the Third Circuit has yet to address whether manifest disregard for the law has survived *Hall Street Associates v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). On October 24, 2018, it once again declined to resolve the issue. *Ross Dress for Less Inc. v. VIWP, L.P.*, No. 17-3145, 2018 WL 5291035, at *3 n.1 (3d Cir. Oct. 24, 2018).

assuming that it remains a viable cause of action in this circuit, Davison failed to meet its burden to prove that the arbitrator manifestly disregarded the law.

Davison argues that the arbitrator exhibited a "manifest disregard for the law" by ignoring the parol evidence rule and determining that Davison violated the AIPA. (ECF No. 26, at 11-15). Establishing a "manifest disregard" claim presents a "tremendous obstacle," because "'if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.'" *Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 174 (3d Cir. 2014) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). Said another way, "there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." *News Am. Publn's, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) (citing *NF & M Corp. v. United Steelworkers of Am.*, 524 F.2d 756, 760 (3d Cir. 1975)). "As long as the arbitrator has arguably construed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that [the] arbitrator has committed a serious error." *Id.* at 24 (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38 (1987)). Davison "'bears the burden of proving that the [arbitrator was] fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" *Id*. (quoting *Duferco v. Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)).

Here, the arbitrator denied Frison's state law fraudulent misrepresentation claim and found liability on the part of Davison only her federal AIPA claim. In rendering his decision, the arbitrator did not explain why he ignored the warranty disclaimer in the IPRPA. In order to determine whether there is absolutely no support at all in the record justifying the arbitrator's determination, the court must first assess whether a disclaimer like the one found in the IPRPA is

lawful and enforceable under the AIPA. If so, the question then becomes whether there was a contract between the parties and what the terms and conditions of that contract were.

1. **Even if the warranty disclaimer found in the IPRPA was valid under state law, a finding by the arbitrator that the warranty disclaimer was unenforceable under the AIPA would not have been a manifest disregard for the law.[4]**

The arbitrator did not specifically explain why he determined that the warranty disclaimer in the IPRPA was unenforceable; nevertheless, in rendering the award, he stressed the AIPA's role in consumer protection and found that Davison had made false representations to Frison violating the act by implication.

The AIPA was designed to "protect inventors from invention promotion scams and the deceptive advertising related to them by authorizing the PTO to publicize complaints that it receives against invention promoters." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 454 (4th Cir. 2004) (citing 145 CONG. REC. S14521 (Nov. 10, 1999)). Specifically, it reads:

> **(b) Civil action.** --(1) Any customer who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation, or any omission of material fact, by that invention promoter (or any agent, employee, director, officer, partner, or independent contractor of such invention promoter), or by the failure of that invention promoter to disclose such information as required under subsection (a), may recover in a civil action against the invention promoter (or the officers, directors, or partners of such invention promoter), in addition to reasonable costs and attorneys' fees--
>
> **(A)** the amount of actual damages incurred by the customer; or
>
> **(B)** at the election of the customer at any time before final judgment is rendered, statutory damages in a sum of not more than $5,000, as the court considers just.
>
> **(2)** Notwithstanding paragraph (1), in a case where the customer sustains the burden of proof, and the court finds, that the invention promoter intentionally

---

[4] A warranty is "[a]n express or implied promise that something in furtherance of the contract is guaranteed by one of the contracting parties; esp., a seller's promise that the thing being sold is as represented or promised." *Warranty*, BLACK'S LAW DICTIONARY (10th ed. 2014). A disclaimer is "[a] renunciation of one's own legal right or claim." *Disclaimer*, BLACK'S LAW DICTIONARY (10th ed. 2014).

10

> misrepresented or omitted a material fact to such customer, or willfully failed to disclose such information as required under subsection (a), with the purpose of deceiving that customer, the court may increase damages to not more than three times the amount awarded, taking into account past complaints made against the invention promoter that resulted in regulatory sanctions or other corrective actions based on those records compiled by the Commissioner of Patents under subsection (d).

35 U.S.C. § 297(b).

No court has addressed whether parties can contract out of subsection (b) of the AIPA, and if the parties can opt out, what constitutes a valid disclaimer. *See F.T.C. v. Davison Assocs., Inc.*, 431 F. Supp. 2d 548, 561 (W.D. Pa. 2006) (explaining in an F.T.C. case that "[d]isclaimers or curative language must be 'sufficiently prominent and unambiguous' such that the overall net-impression of the communication becomes non-deceptive") (citation omitted). Certainly, given the fact that the AIPA is a consumer protection statute, there remains a very real question whether boilerplate disclaimers that are indistinguishable in font type from the remainder of the contract are sufficient to disclaim any promise or guarantee of financial gain. *See Knight v. Idea Buyer, LLC*, Case No. 2:16-cv-1175, 2017 WL 1838019, at *5 (S.D. Ohio May 8, 2017) (treating the AIPA as a statutory right rather than a contractual one). The court need not resolve the issue here today, as it cannot be said that the arbitrator manifestly disregarded the law when he refused to apply the legal disclaimer.

"Manifest disregard for the law means more than mere legal error or misunderstanding[; r]ather, the decision must fly in the face of *clearly established legal precedent*." *Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc.*, 661 F. Supp. 2d 524, 542 (E.D. Pa. 2009) (internal citation omitted) (emphasis added). As neither party located any binding precedent on this issue and the court was unable to find any, vacatur cannot be found on this basis. In other words,

Davison did not show any applicable precedent to enforce a disclaimer of representations or warranties under the AIPA. Thus, the arbitrator did not manifestly disregard for the law.

> 2. **Even if boilerplate disclaimers like those included by Davison in the Pre-Development Agreement and IPRPA were lawful and enforceable under the AIPA, Davison still cannot vacate the award on the basis of manifest disregard for the law.**

At issue are the disclaimers in the Pre-Development Agreement and the IPRPA and whether parol evidence can be used to modify the express terms of the agreements. Davison argues that the arbitrator impermissibly considered parol evidence when he noted that (a) a representative of Davison informed Frison that her idea was reasonable, when in fact all that meant was that the paperwork was completed properly, and the invention was not one of the prohibited types of inventions considered by Davison; (b) Davison reserved a ten percent commission on all monies received by the sale or license of Frison's proposed product, when in fact there was virtually no chance of any commission being paid; (c) Frison's proposed product was being handled by the "director of new products", not by just any employee; and (d) Davison's president corresponded with Frison about her proposed product. Thus, Davison argues that the arbitrator manifestly disregarded controlling law, i.e., by considering parol evidence in violation of the parol evidence rule. (ECF No. 26, at 9-16).

With respect to the Pre-Development Agreement, Frison argues that it was never signed and the terms do not reflect a meeting of the minds. (ECF No. 37, at 5). The mere presence of a merger clause "does not prove that the writing itself was ever assented to or became operative as a contract." JOHN EDWARD MURRAY JR, MURRAY ON CONTRACTS, 439 (4th ed. 2001). Before the parol evidence rule can be invoked, there must be a contract. The offeror is the master of the offer and the offeror can limit the means of acceptance. *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136-38 (Pa. 1999) (explaining "law of this Commonwealth makes

clear that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract"). The Pre-Development Agreement limits acceptance to the *execution of the agreement*. Specifically, Davison's obligations under the contract are only triggered "*after the execution of this* agreement by Client." (*Id.* at 27) (emphasis added). The Pre-Development Agreement also contains the provision, "IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, on behalf of themselves, their successors, representatives, heirs and assigns affix their hand and seal the day and date *next to their signature below*." (*Id.* at 27) (emphasis added). Thus, the Pre-Development Agreement was a bilateral contract where both parties had performance obligations and, as such, could not be accepted unilaterally by performance only. *Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 665 (Pa. Super. Ct. 2014).

The arbitrator had competing affidavits before him. Frison testified that she never had an electronic account with Davison and, thus, could not have signed the Pre-Development Agreement. Conversely, the representative for Davison declared Frison signed the contract. Given Frison's affidavit, there was evidence from which the arbitrator could find that there was never a meeting of the minds between Davison and Frison with respect to the Pre-Development Agreement, a determination that would render its warranty and representation disclaimers inapplicable. Thus, the arbitrator cannot be said to have manifestly disregarded the law because there was sufficient evidence to support a finding that the Pre-Development Agreement was not a valid and enforceable contract.

With respect to the IPRPA, the parties agree that it is a valid contract and contains the following provision:

> It will take our staff approximately eight to ten weeks to complete these steps. Once finished, the Executive Summary, Integrated Product Rendering and Provisional

> Patent Application Materials will be sent to you immediately. Please remember that we do not promise or guarantee any financial gain from the development of any new product.

(ECF No. 32-1). Thus, there is an issue about whether parol evidence is admissible with respect to the IPRPA. "Pennsylvania's parol evidence rule mandates that when a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 594 (3d Cir. 2009). The parol evidence rule applies where a contract is fully integrated, i.e., it "was intended by the parties to encompass the entire understanding between the parties." *SodexoMAGIC, LLC v. Drexel Univ.*, Civ. Act. No. 16-5144, 2018 WL 3659241, at *15 (E.D. Pa. Aug. 2, 2018). "A merger or integration clause will serve as a strong indication that the contract is fully integrated, the intention of the parties is also a key consideration in a court's analysis." *Id.* Because there is no merger or integration clause and the parties had numerous discussions relating to multiple possible agreements, it cannot be said that the IPRPA was a final and definite expression of the parties' agreement. In addition, where there is an accusation of fraud in the inducement and the writing is not fully integrated, the parol evidence rule may not apply. *See Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 326 (Pa. Super. Ct. 2015). Consequently, Davison failed to carry its substantial burden of showing a manifest disregard of the law. *See Bellantuono*, 557 F. App'x at 170.[5]

---

[5] Contrary to Davison's assertion, manifest disregard and exceeding its powers are two separate bases for vacatur. *Ross Dress for Less Inc. v. VIWP, L.P.*, No. 17-3145, 2018 WL 5291035, at *2-3 (3d Cir. Oct. 24, 2018). "Courts should vacate an arbitration award [on the basis of excessive use of powers] if: (1) the form of the award cannot 'be rationally derived either from the agreement between the parties or from the parties submissions to the arbitrators' and (2) the terms of the award are 'completely irrational.'" *PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd.*, 400 F. App'x 654, 655-56 (3d Cir. 2010) (quoting *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989)). "Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Id.* at *2. As explained in Part "B", the arbitrator did not substitute his own views of economic justice and considered the agreement in issue and the AIPA. Like with manifest injustice, where the law is unsettled, the arbitrator cannot be said to have exceeded his authority. *Ross Dress for Less Inc.*, 2018 WL 5291035, at *3.

### C. Manifest Disregard of the Law for Damages and Fees[6]

Davison attacks the propriety of the Award's damages and attorneys' fees in two ways. In count I of the complaint, it is argued that the arbitrator exceeded the scope of his powers under § 10(a)(4) of the FAA by failing to interpret – in any way – the contractual language pertaining to damages and fees, and by failing to cite any legal foundation for the Award. (ECF Nos. 1 ¶¶ 39-40; 26, at 15-16). In count II of its complaint, Davison alternatively argues that the Award should be modified pursuant to § 11(a) of the FAA due to the arbitrator's material miscalculation of the damages and attorney fees. (ECF No. 1 ¶¶ 42-48).

With respect to damages and fees available to a claimant under the AIPA, § 297(b)(1) provides:

> **(b) Civil Action.--(1)** Any customer who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation, or any omission of material fact, by that invention promoter (or any agent, employee, director, officer, partner, or independent contractor of such invention promoter), or by the failure of that invention promoter to disclose such information as required under subsection (a), may recover in a civil action against the invention promoter (or the officers, directors, or partners of such invention promoter), in addition to reasonable costs and *attorneys' fees*--
>
> **(A)** the amount of actual damages incurred by the customer; or
>
> **(B)** at the election of the customer at any time before final judgment is rendered, statutory damages in a sum of not more than $5,000, as the court considers just.

35 U.S.C. § 297(b)(1) (emphasis added). Section 297(b)(2) provides:

> [I]n a case where the customer sustains the burden of proof, and the court finds, that the invention promoter *intentionally misrepresented* or *omitted* a material fact to such customer, or willfully failed to disclose such information as required under

---

[6] Similarly, the arbitrator did not exceed his authority when crafting an award for damages and fees. The Court of Appeals for the Third Circuit recently explained that an award may be vacated where it "is so completely irrational that it lacks support altogether." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012). While manifest injustice and excessive use of powers present two distinct ways for vacatur, for purposes of this issue, the law is essentially the same. Thus, this court adopts its analysis in "(C)" and concludes that Davison failed to show an excessive use of powers.

> subsection (a), *with the purpose of deceiving that customer*, the court may increase damages to not more than three times the amount awarded, taking into account past complaints made against the invention promoter that resulted in regulatory sanctions or other corrective actions based on those records compiled by the Commissioner of Patents under subsection (d).

35 U.S.C. § 297(b)(2) (emphasis added). The record before the court makes clear that Frison expended $6,645.00 for services performed by Davison. During the arbitration, Frison filed a fee petition requesting $46,528.79 in attorneys' fees and costs. (ECF No. 30-7). Davison submitted a brief questioning the legitimacy of many of the charges by Frison's attorney. (ECF No. 30-8). Specifically, Davison argued that the amount was too large considering the amount Frison actually paid for Davison's services; the petition covered all the time Frison's counsel spent working on the case and not just on the AIPA claims; Frison's counsel spent an unjustified amount of time on discrete tasks; and the petition sought compensation for unreasonable and unnecessary expenditures. (*Id.*) In the Award, the arbitrator found Davison liable for "the principal amount of $13,290.00 ($6,645 x 2 for Davison's deceptive actions against [Frison]. . . )." (ECF No. 30-9, at 4). He also provided for "[r]easonable attorney's fees of $10,000.00." (*Id.*). There was no further discussion of the justification for either.

**1) Damages**

With respect to the adequacy of the arbitrator's explanation for purposes of § 10(a)(4) of the FAA, while the arbitrator's reasoning was sparse, he explicitly found that Davison violated § 297 of the AIPA. By increasing the damages by a factor of two – per the discretion afforded under § 297(b)(2) to increase damages by up to a factor of three where there is evidence of intentional misrepresentation – the arbitrator makes clear that he considered the conduct by Davison to be intentional. As the court already observed, "if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Bellantuono*, 557 F.

App'x at 174 (citation omitted). While the arbitrator's discussion is minimal, it is sufficient. Thus, the doubling of damages is not subject to vacatur under § 10(a)(4).

**2) Fees**

Similarly, while the arbitrator did not provide specific reasoning for his award of attorneys' fees, the record contains Frison's fee petition for $46,528.79, comprised of approximately nine pages of billed hours. (ECF No. 30-7). Despite Frison's request, the arbitrator awarded only $10,000.00, which Davison criticizes as being "round" and "logically indefensible" but fails to suggest how it is logically indefensible or even what a reasonable amount would be. (ECF No. 26, at 12). "If a court is to vacate an arbitration award on the basis of a manifest disregard of the law, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." *Kulchinsky v. Ameriprise Fin.*, Civ. Act. No. 11-0319, 2011 WL 2745967, at *7 (E.D. Pa. July 14, 2011) (quoting *O.R. Secs., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988)). A "mere legal error or misunderstanding" is not enough. *Id.* (quoting *Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc.*, 661 F.Supp.2d 524, 542 (E.D. Pa. 2009)). Before the arbitrator, Frison's counsel submitted evidence of its attorneys' fees in the form of a fee petition detailing the time spent and the hourly rate in preparation of its affirmative case. Davison responded to the petition before the arbitrator. (ECF No. 30-8, at 5). Even though the arbitrator did not provide the full reasoning behind his decision, this court cannot say there is no colorable justification for the arbitrator's decision or that it was "completely irrational". *See Andorra Servs. Inc. v. Venfleet, Ltd.*, 355 F. App'x 622, 629 (3d Cir. 2009). Accordingly, the attorneys' fee award will not be vacated under § 10(a)(4) of the FAA.

### D. Modification

Section 11(a) of the FAA provides that the court may modify or correct an award when "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). Modification is "entirely discretionary and should 'promote justice between the parties.'" *Andorra Servs. Inc.*, 355 F. App'x at 628 (quoting 9 U.S.C. § 11). Davison's argument for modification is the same as Davison's argument for vacatur: that the Award did not explicitly state that Davison's false representations were intentional. (ECF No. 26, at 12-13). As discussed, however, the arbitrator specified that Davison's conduct violated § 297 of the AIPA, under which treble damages are appropriate when a misrepresentation or omission was intentional. The arbitrator then doubled the damages in accordance with § 297. The court finds that this is a sufficiently clear indication of the arbitrator's determination that Davison's conduct was intentional. The damages award will not be modified.

### V. CONCLUSION

Based upon the foregoing, Davison's motion for summary judgment (ECF No. 25) will be DENIED, and Frison's motion for summary judgment (ECF No. 29) will be GRANTED, to the extent that Frison seeks confirmation of the Award pursuant to 9 U.S.C. § 9.

An appropriate order will be entered.

*/s/ Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge

Dated: December 4, 2018
cc/ecf: All counsel of record